JOSÉ RODRÍGUEZ MONTALVO, demandante y apelado, *v.* GERÓNIMO FONALLEDAS, demandado y apelante.

Núm. 10304.—*Sometido:* Enero 2, 1951. *Resuelto:* Enero 23, 1951.

*Virgilio Brunet,* abogado del apelante; *Víctor M. Bosch,* abogado del apelado; *F. Fernández Cuyar,* como *amicus curiae.*

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

José Rodríguez Montalvo radicó ante el Tribunal de Distrito de San Juan demanda en reclamación de salarios contra Gerónimo Fonalledas. En ella alegó en síntesis haber trabajado para el demandado en calidad de chófer en la transportación de leche entre distintas poblaciones, desde antes del 2 de enero de 1947 hasta después de diciembre 31 de 1948, durante los siete días consecutivos de la semana, entrando a su faena a las cinco de la mañana y no saliendo de la misma nunca antes de las cuatro de la tarde, es decir, trabajando no menos de dos y media horas diarias en exceso de la jornada legal de ocho horas y recibiendo por su trabajo un salario de $19 semanales; y que el demandado no cumplió con lo estatuído en el Decreto Mandatorio Núm. 12 que regula el servicio de transporte, al dejar de pagarle los jornales mínimos por hora, las horas extras y las vacaciones regulares establecidas por ese Decreto. A virtud de ello, solicita se condene al demandado a pagarle la suma de $1,768, más una cantidad igual en concepto de penalidad, así como las costas y honorarios de abogado.

El demandado contestó, alegando que el demandante trabajó en ciertas fechas que especifica durante el año 1947 como repartidor de leche por un jornal de veinticinco centavos la hora y todo el tiempo restante comprendido entre enero de 1947 y el 2 de diciembre de 1948 como chófer a cargo del reparto de leche, un total de ocho horas diarias durante siete días a la semana a razón de treinta centavos la hora, excepción hecha de las ocho horas del séptimo día, las que le eran pagadas a razón de sesenta centavos la hora; que en adición a los jornales antes especificados el demandante recibía del

demandado dos litros de leche. diariamente al precio de diez centavos el litro, por los cuales el demandado le descontaba a aquél del sueldo tan sólo la cantidad de veinte centavos semanales; que el demandado no se dedica al negocio de transporte y sí exclusivamente al negocio de vaquería que incluye, entre otras actividades, la entrega del producto a los clientes del negocio en sus propios domicilios, por lo que el Decreto Núm. 12, a su juicio, no es de aplicación a su negocio, el que se rige por otro decreto aplicable a las vaquerías conocido como Decreto Núm. 10 de la Junta de Salario Mínimo; que el demandante ha recibido el importe total del trabajo por él efectuado; que el demandante no tiene derecho a vacaciones y que él no le adeuda suma alguna.

Trabada así la contienda y luego de ciertos incidentes que es innecesario reseñar, las partes suscribieron y radicaron una estipulación, que fué aprobada por la corte, cuyos párrafos pertinentes textualmente copiados dicen así:

"1. Que la única cuestión a ser resuelta por este Hon. Tribunal es si debe o no ser aplicado al caso de epígrafe el decreto Núm. 12 de la Junta de Salario Mínimo que regula el negocio de transporte.

"2. Que el demandante se empleaba como chófer manejando un vehículo de motor que transportaba leche desde la vaquería Las Tres Monjitas propiedad del demandado y radicada en el Barrio Hato Rey del Municipio de Río Piedras, P. R., hasta el Barrio de Santurce del Municipio de San Juan para repartirla a domicilio entre los clientes de la mencionada vaquería."

Posteriormente, el tribunal inferior dictó sentencia en la que, luego de hacer constar que tomaba conocimiento judicial del hecho de que el Decreto Mandatorio Núm. 10 fijando salarios mínimos, horas máximas de labor y condiciones de trabajo a la industria de la leche había sido anulado por este Tribunal,[1] manifestó que el problema que el caso presentaba era si podía aplicarse otro Decreto Mandatorio a determinada fase de la industria lechera, cuando no existía un

---

[1] Véase *Escudero* v. *Junta Salario Mínimo*, 66 D.P.R. 594, 600.

decreto específico que regulara dicha industria en su totalidad. Llegó finalmente a la conclusión de que el Decreto Mandatorio Núm. 12 era aplicable al caso que tenía ante sí y condenó al demandado a pagar al demandante la suma de $1,768, reclamada en la demanda, más una cantidad igual por concepto de penalidad, sin costas ni honorarios de abogado. De esa sentencia apeló el demandado y alega ahora ante nos que erró el tribunal inferior al resolver que el Decreto Mandatorio Núm. 12 se aplica al negocio de vaquería y al dictar sentencia condenándole a pagar al demandante las sumas indicadas.

El Decreto Mandatorio Núm. 12 (enmendado) fijando salario mínimo, períodos máximos de labor y condiciones de trabajo para los empleados del servicio de transporte en Puerto Rico, que empezó a regir el 1º de febrero de 1948, provee en lo pertinente en su párrafo A que "el *Servicio de Transporte* comprenderá, sin que ello se entienda como limitación, todo acto, proceso, operación, trabajo o servicio que sea necesario o incidental o esté relacionado con la traslación o conducción de personas o cosas, desde un sitio a otro, por o en cualquier clase de vehículo de motor, incluyendo aquellos que corran por rieles." Y que *"no abarcará:* (1) el transporte . . . (3) *que se realice por cualquier patrono en vehículos de su propiedad y bajo su administración para fines o en relación con su industria, negocio u ocupación si le fuera aplicable otro Decreto Mandatorio de esta Junta."* (Bastardillas nuestras.)

La cuestión a determinarse es, pues, si dicho Decreto Mandatorio Núm. 12 es de aplicación al presente caso, en el cual, como hemos visto, aparece que el demandado empleaba al demandante como chófer para manejarle un vehículo de motor de su propiedad en que se transportaba leche de la vaquería del demandado, radicada en un barrio de Río Piedras, para ser repartida a domicilio a los clientes de dicho demandado residentes en Santurce. A primera vista el Decreto Mandatorio Núm. 12 parece comprender una situación

como la aquí envuelta, ya que el mismo es aplicable a todo trabajo o servicio necesario o incidental a la traslación o conducción de cosas desde un sitio a otro en cualquier clase de vehículos de motor y toda vez que para la fecha de su aprobación no existía ningún otro Decreto Mandatorio aplicable a las vaquerías. Empero, analizada la cuestión con detenimiento, tenemos que concluir que el Decreto Mandatonio Núm. 12 no es aplicable a una situación como la aquí envuelta. Como hemos visto, en el inciso 3 del párrafo A del mismo se dispone que el servicio de transporte no abarcará el transporte "que se realice por cualquier patrono en vehículos de su propiedad y bajo su administración para fines o en relación con su industria, negocio u ocupación si le fuera aplicable otro Decreto Mandatorio de esta Junta."

No hay duda de que cuando el Decreto Mandatorio Núm. 12 empezó a regir (febrero 1º de 1948) no existía ningún otro Decreto Mandatorio aplicable a la industria de vaquería, ya que el Decreto Mandatorio Núm. 10, de 5 de mayo de 1945, había sido anulado por sentencia de este Tribunal de fecha 26 de julio de 1946. *Escudero* v. *Junta Salario Mínimo*, supra, nota (1). Es lógico inferir, sin embargo, que la Junta de Salario Mínimo al aprobar el Decreto Mandatorio Núm. 12 en la forma en que lo hizo tenía pleno conocimiento de que si bien el Decreto Mandatorio Núm. 10 había sido anulado, en la sentencia nuestra se ordenaba la devolución del caso a la Junta de Salario Mínimo para ulteriores procedimientos no inconsistentes con la opinión por nosotros dictada. Tomamos conocimiento judicial de que como cuestión de hecho esos pasos ulteriores ya se han dado y han culminado en la aprobación del Decreto Mandatorio Núm. 18, fijando salarios mínimos, períodos máximos de labor y demás condiciones de trabajo para los trabajadores de la industria de la leche en Puerto Rico, que empezó a regir el primero de enero de 1951.(²)

---

(²) En el párrafo segundo de ese Decreto se hace constar de manera taxativa que la *"industria de la leche* comprende, . . . . el transporte que

A virtud de lo antes expuesto, llegamos a la conclusión de que si bien a la fecha de la vigencia del Decreto Mandatorio Núm. 12 no había ningún otro decreto que cubriera la industria de la leche, a que se dedica el demandado—lo que aparentemente hacía que el Decreto Mandatorio Núm. 12 fuera aplicable a éste—sin embargo, como la Junta que aprobó dicho Decreto Núm. 12 tuvo necesariamente en consideración el hecho de que ya la industria de la leche había sido reglamentada por otro decreto que, aunque anulado, estaba sujeto a ulteriores procedimientos, no fué su propósito al aprobarlo que el mismo fuese aplicable a la industria de la leche, en tanto en cuanto en ésta era necesario transportar el producto a los clientes para ser repartido a domicilio. Por tanto, concluimos que el Decreto Mandatorio Núm. 12 no es de aplicación al caso de autos.

■ Ahora bien, aunque en la estipulación ya mencionada se hace constar que la única cuestión a ser resuelta lo era si el tantas veces mencionado Decreto era aplicable o no al presente caso, el demandado, al discutir el segundo error señalado, hace constar que "aún asumiendo que el Decreto Núm. 12 fuera aplicable, el demandado tenía derecho a ofrecer prueba que habría de afectar el montante de la reclamación;" que "lo mismo hubiera ocurrido si el tribunal inferior hubiera declarado que el Decreto Núm. 12 no era aplicable;" y que "siempre hubiera sido necesario ofrecer una oportunidad al demandante y demandado para ofrecer prueba en relación con los hechos en controversia sobre horas extras, séptimo día y vacaciones." El demandante no se opone a ello, puesto que no ha radicado alegato en oposición a las pretensiones del demandado. En su consecuencia, nos parece que lo más lógico y lo más justo es que se devuelva el caso al tribunal sentenciador para que éste determine si el demandante ha trabajado horas en exceso de la jornada dia-

.se lleve a cabo en vehículos pertenecientes, administrados u operados por cualquier patrono de dicha industria," o sea, una situación exactamente igual a la aquí envuelta.

ria de labor, al igual que si ha disfrutado o no del séptimo día de descanso, y finalmente si dicho demandante tiene derecho a recobrar del demandado algunas sumas de dinero por tales conceptos.

*Debe revocarse la sentencia apelada y devolverse el caso al tribunal inferior para ulteriores procedimientos compatibles con esta opinión.*

El Juez Asociado Sr. Snyder no intervino.