Fernando Sierra Berdecía, Secretario del Trabajo del Estado Libre Asociado de Puerto Rico, etc., demandante y apelante, *v.* Borinquen Pasteurizer, Inc., demandada y apelada.

*Número:* 12185. *Resuelto:* 21 de septiembre de 1961.

*Domingo Candelario* y *Manuel Janer Mendía,* abogados del apelante; *Charles H. Juliá,* abogado de la apelada; *Beverley, Castro* y *Rodríguez Lebrón,* abogados de la Coca Cola Bottling Company of Puerto Rico, Inc., como *amicus curiae.*

Sala integrada por el Juez Asociado Señor Belaval, como Presidente de Sala, y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

Per curiam. La demanda por salarios dejados de pagar que está envuelta en el presente caso, se refiere a los años 1951, 1952 y 1953. El punto preciso a resolverse es si conforme a los hechos de este caso, el trabajo realizado por los

obreros demandantes para la demandada está regido en cuanto al tipo de salario, por el Decreto Mandatario núm. 5, referente a la industria de refrescos embotellados y cerveza, o por el Núm. 16 referente al comercio al por mayor.

El Decreto Núm. 5, aprobado en 12 de enero de 1944, definió la industria regulada de la siguiente manera:

"La industria de cerveza y gaseosa o de cualesquiera de ellas comprende, sin que ello se entienda como una limitación, todos los actos, procesos, operaciones y servicios que sean necesarios, incidentales o relacionados con la preparación, producción, distribución o disposición por el fabricante de cerveza de cualquier clase, con alcohol o sin él, o de cualquier bebida refrescante que se prepare a base de agua carbonatada."

. Años más tarde, el 24 de agosto de 1949, la Junta de Salario Mínimo emitió su Decreto Núm. 16, regulando el salario mínimo y demás condiciones de trabajo de los empleados del comercio al por mayor. En el artículo 1 se hicieron las siguientes definiciones:

"A. Comercio al Por Mayor abarca todo establecimiento, empresa o agencia que se dedique a la venta de mercadería a detallistas, a establecimientos comerciales o a otros mayoristas. Incluye mayoristas, agentes, corredores, comisionistas y sucursales de venta de empresas fabriles. Comprende los procesos de compra, venta, almacenaje, transporte o cualquier actividad relacionada con dichos procesos. No abarcará, sin embargo, aquellos establecimientos que tengan dos o menos empleados parcialmente dedicados a cualquiera de los procesos enumerados en esta definición, los cuales establecimientos quedarán sujetos a las disposiciones del decreto mandatorio que sea aplicable a la actividad que conjuntamente lleven a cabo con las de ventas al por mayor. Tampoco abarcará cualquier subdivisión de un establecimiento que funcione con empleados cuyo tiempo esté totalmente dedicado a los procesos correspondientes del comercio al detall.

"B. *Sucursal de Venta de Empresa Fabril* significará un establecimiento subsidiario de una empresa fabril organizado en local distinto al de ésta y destinado para vender o distribuir al por mayor los productos de dicha empresa fabril."

En 14 de septiembre de 1950 el Departamento del Trabajo emitió un memorando interpretativo (Núm. 8 del Decreto Núm. 16) y en el mismo se expone el criterio del Departamento para determinar qué es una sucursal de empresa fabril.

"Somos de opinión que a los fines de determinar si existe o no una 'Sucursal de Venta de Empresa Fabril' (Artículo I-A, supra), el sitio en que se almacene el producto no es lo decisivo, aunque puede ser un factor importante a ser considerado en casos dudosos.—A nuestro juicio, lo verdaderamente determinante es el sitio y la forma en que se realizan las ventas o se distribuye el producto, ya que un industrial puede almacenar su producto en el mismo establecimiento en que lo fabrica y organizar un establecimiento comercial completamente aparte para llevar a cabo las transacciones de venta del producto al por mayor. O puede almacenarlo en un local distinto y no tener organizado un 'establecimiento comercial' para vender o distribuir el producto. Que es necesario que exista un 'establecimiento comercial' organizado para vender o distribuir el producto al por mayor surge evidentemente de la explicación que de su intención da la propia Junta en su Determinación de Hechos y Opinión, supra—el decreto no cubre los procesos fabriles 'hasta el punto en que [el industrial] entregue su producto al comerciante o entidad que habrá de vender el mismo.' Como la 'entrega' de su producto por el industrial al comerciante que habrá de venderlo necesariamente conlleva la venta anterior del producto en el curso usual de los negocios, a dicha venta no puede aplicarse el Decreto Mandatorio núm. 16. Por lo tanto, hay que distinguir entre las ventas que hace un industrial a mayoristas o detallistas para llevar su producto al mercado consumidor, las cuales no están cubiertas por el decreto, y las que pueda realizar un industrial como comerciante, o sea, en un establecimiento subsidiario de su empresa fabril, organizado el local distinto al de ésta y destinado a vender o distribuir su producto al por mayor. Las primeras son 'ventas industriales' y las segundas, 'ventas comerciales.'

"La manera más fácil de distinguir entre una clase de ventas y otras consiste en determinar si las mismas se realizan o no en un establecimiento comercial. Esto es, en un local destinado a la venta o distribución de artículos, que quiere decir un establecimiento que usual o diariamente está abierto a clientes y

compradores para realizar en el mismo transacciones de compra venta." (Véase alegato del querellado-apelado, pág. 5.)

En la querella se alegó, en síntesis, que la querellada era una corporación doméstica que se dedicaba, a la fecha de la querella, al embotellado, distribución y ventas al por mayor de bebidas gaseosas, con oficina principal y fábrica en Hato Rey, San Juan, Puerto Rico, y una sucursal de venta en Ponce, y que dicha sucursal era un establecimiento subsidiario a la empresa fabril, organizada en local distinto y destinado a la venta al por mayor de los refrescos embotellados en Hato Rey. Que los obreros representados por el querellante trabajaron en ella para la querellada; además, que dichos obreros quedaban cubiertos por el Decreto Mandatario Núm. 16 y que dejaron de percibir las cantidades que se enumeran en el hecho cuarto de la demanda, cuyo total es $1,747.22.

Se alegó el requerimiento y la falta de pago y se pidió sentencia por el total de $3,494.44. Es decir, $1,747.22 por la diferencia en salario dejada de recibir y una cantidad igual en concepto de penalidad, a distribuirse correspondientemente entre los obreros reclamantes, conforme a la Sección 25 de la Ley Núm. 8 de 5 de abril de 1941, según quedó enmendada por la Ley Núm. 45 de 14 de mayo de 1947.

La querellada aceptó algunos hechos de la demanda, negando específicamente que tuviera sucursal de venta y que se dedicara a la distribución y venta al por mayor de bebidas gaseosas y, además, negó que les adeudara cantidad alguna a los reclamantes.

La vista de la querella fue celebrada el 5 de octubre de 1956. Al comienzo de la misma las partes estipularon que la cuestión a decidir era si era de aplicación el Decreto Mandatorio Núm. 16 o el Núm. 5; si el segundo era de aplicación, entonces no se adeudaba cantidad alguna a los reclamantes y que para concluir cuál decreto era el aplicable había que determinar si el almacén que mantenía la querellada en Ponce era sucursal de venta o no, estipulándose también que los

querellantes eran empleados de la querellada en las fechas a que se contrae la querella (los trabajos se realizaron según la querella entre el 26 de enero de 1951 y el 1ro. de octubre de 1953) ; que la querellante requirió de pago a la querellada y que la controversia quedó limitada a establecer si era sucursal de venta o no el almacén, si las transacciones eran comerciales o industriales y si era aplicable el Decreto Mandatorio Núm. 16.

La evidencia testifical resumida por el tribunal sentenciador es como sigue:

Por la querellante declararon Fructuoso Flores Figueroa y Edelmiro Rosado, éste último en *rebuttal*. En síntesis, ambos declararon que el jefe de ellos en Ponce lo era don Aurelio Guzmán Zayas. Que el almacén de la querellada era uno cerrado donde podían entrar dos *trucks* y una guagüita de carga; que se utilizaba el local para almacenar las gaseosas que eran luego vendidas al comercio al por mayor. Que se almacenaba dos o tres veces a la semana y salían los empleados todos los días desde por la mañana y regresaban por la tarde teniendo libros de ruta; que en cada *truck* iban el chófer, vendedor y el ayudante. Que llegaban a los comerciantes, recogían las cajas vacías y entregaban cajas llenas si el comerciante las deseaba. Que no tenían órdenes previas ni sabían de antemano cuánto se iba a vender; que el comerciante pagaba directamente al vendedor y todas las ventas se hacían al comerciante. Que en el almacén había una máquina de sumar, un archivo y un canasto de papeles y un escritorio. Que el Sr. Guzmán era el que les pagaba y preparaba las nóminas unas veces pagaba los jueves y otras los viernes. Que no saben si el almacén quedaba abierto cuando ellos salían y no saben, además, si se hacían transacciones comerciales en dicho almacén.

Por la querellada declaró el Sr. Aurelio Guzmán Zayas y manifestó que tenían un garaje en Ponce, en el que había do. *trucks* y una guagüita para su propio uso; que él era además

de vendedor, el encargado de dicho garaje; que las bebidas se recibían desde San Juan en un *trailer* y ahí se pasaban a los *trucks* y el sobrante se dejaba en un espacio del mismo garaje; que todas las mañanas, tanto el testigo como los reclamantes, salían a vender por las distintas rutas y que al salir él cerraba el almacén y lo abría por la tarde para recibir los *trucks* y guardar el equipo; que recibía el dinero de los vendedores y entonces preparaba semanalmente nóminas y pagaba de dicho dinero; que al principio guardaba el dinero en el mismo almacén pero después de ocurrir un robo, lo depositaba en el Banco en Ponce para transferir a la cuenta de la querellada en el Royal Bank en Hato Rey; que no tenía cuenta de cheques; que los *trailers* venían un día sí y otro no, a veces cada dos días y a veces devolvía el dinero con el mismo *trailer;* que la costumbre era visitar los clientes cada ocho días, que no tenían teléfono ni recibían órdenes por teléfono ni verbalmente; que a veces había llamadas de San Juan y algunas veces de Ponce, pero muy raras veces; que cuando salían a vender si a algún comerciante no se le podía despachar mercancía por haberse agotado la del *truck* tenía que aguardar una semana para recibirla y servirla.

El tribunal sentenciador llegó a las siguientes conclusiones de hecho:

"1. Por el resultado de la prueba y de las estipulaciones hechas por las partes, el tribunal llega a la conclusión de que la querellada es una corporación doméstica dedicada al embotellado y venta de bebidas gaseosas en Puerto Rico, teniendo su oficina principal y su fábrica en Hato Rey, San Juan, Puerto Rico.

"2. Que los querellantes trabajaban para la querellada a la fecha a que se contrae la querella en este caso y lo hacían en su condición de vendedores y ayudantes para la distribución de las bebidas gaseosas en la ciudad de Ponce y pueblos limítrofes.

"3. Que los reclamantes, a través del Secretario del Trabajo enviaron un análisis y una carta requerimiento de pago a la querellada y ésta se negó a pagar la cantidad reclamada.

"4. Que según ha quedado establecido por la prueba en este caso, el local que utilizaba la querellada en Ponce no era una sucursal de ventas sino un mero almacén o depósito, conforme a la definición dada por el Artículo primero, párrafo B del Decreto Mandatorio Núm. 16, según fuera el mismo interpretado en el Memorándum Interpretativo Núm. 8 del Departamento del Trabajo publicado el 14 de septiembre de 1950.

"Dicho memorándum interpretativo en su parte pertinente dice:

'La manera más fácil de distinguir entre una clase de venta y otras consiste en determinar si las mismas se realizan o no en un establecimiento comercial. Esto es, en un local destinado a la venta o distribución de artículos, que quiere decir un establecimiento *que usual o diariamente está abierto a los clientes y compradores para realizar en el mismo transacciones de compraventa.*' (Bastardillas nuestras.)

"5. Que por las razones antes indicadas no se trataba en este caso de un establecimiento comercial tal cual lo define para sus propósitos el Decreto Mandatorio Núm. 16."

Como conclusión de derecho resolvió que no era de aplicación en el caso de autos el Decreto Mandatorio Núm. 16 por no ser el local que tenía establecido en Ponce la querellada un establecimiento comercial para la venta al por mayor de sus productos y que sí era de aplicación al mismo el Decreto Mandatorio Núm. 5 que se refiere a la industria de embotellado y ventas de gaseosas.(1)

---

(1) Por el Decreto Núm. 24 que comenzó a regir el 1ro. de agosto de 1954 se saca la industria cervecera de la reglamentación del Decreto Núm. 5, quedando la de gaseosa solamente bajo este último. Nótese que este Decreto Núm. 24 y los que más adelante se relacionan, son posteriores a los hechos del caso en sí.

El 26 de junio de 1956 se aprobó la nueva Ley de Salario Mínimo por la cual, conforme al alegato del apelante (pág. 5), "la Junta de Salario

El apelante señala la comisión de dos errores que discute conjuntamente. Sostiene que el tribunal de instancia cometió error al resolver que el negocio de la querellada en Ponce no era una "sucursal de venta de empresa fabril" conforme a los términos del Decreto Mandatorio Núm. 16, y al resolver que el decreto aplicable al caso era el Núm. 5 sobre la industria de refrescos embotellados y cerveza.

Ninguno de esos errores fue cometido. La prueba aportada por los querellantes, como queda antes resumida, no demostró que la querellada, para la época a que se refiere la reclamación, mantuviera u operara en Ponce un "establecimiento subsidiario de una empresa fabril organizado en local distinto al de ésta y destinado para vender o distribuir al por mayor productos de dicha empresa fabril." Un simple sitio para almacenar refrescos embotellados, en el cual los mismos ni se vendían ni se distribuían no puede considerarse la "Sucursal de Venta de Empresa Fabril" definida por el inciso "B" del Art. 1 del Decreto Mandatorio Núm. 16.

Tratándose de una industria de embotellado y venta de gaseosas debe prevalecer la aplicación del Decreto Mandatorio Núm. 5, que específicamente se refiere a esa industria. Véanse *Rodríguez* v. *Fonalledas*, 72 D.P.R. 51 (1951); *Cervecería India* v. *Municipio*, 77 D.P.R. 100 (1954); *Santana* v. *Blasco*, 78 D.P.R. 655 (1955).

*Debe dictarse sentencia confirmando el fallo recurrido.*

---

Mínimo perdió las facultades de que gozaba anteriormente para reglamentar las otras condiciones de trabajo dentro de las distintas industrias, aparte de lo relativo al salario mínimo." Bajo esta nueva ley se aprobó el Decreto Núm. 33 (30 de octubre de 1957) aplicable a la industria de alimentos y productos relacionados, y expresamente se incluyó en su alcance la fabricación de gaseosas y bebidas refrescantes. En esa forma la fabricación de gaseosas quedó cubierta, en cuanto a salarios por el Decreto Núm. 33 y en cuanto a las demás condiciones de trabajo continuó cubierta por el Núm. 5

El Decreto Núm. 34 aplicable a la industria de comercio al por mayor y almacenaje comenzó a regir también el 30 de octubre de 1957 y por él se fijan los salarios en esas industrias, pero las demás condiciones de trabajo continúan rigiéndose por el Decreto Núm. 16. Este Decreto Núm. 34 incluye dentro de su alcance las suscursales de ventas de empresas fabriles al igual que lo hacía el anterior Núm. 16.