LEONARDO DE LEÓN y OTROS, demandantes y recurridos, *v.* KIMBERLY CLARK PUERTO RICO, INC., demandada y recurrente.

*Número:* R-75-220     *Resuelto:* 29 de abril de 1977

*McConnell, Valdés, Kelley, Sifre, Griggs & Ruiz Suria* y *Radamés A. Torruellas,* abogados de la recurrente; *Angel T. Berríos Pagán* y *Jorge A. Farinacci García,* abogados de los recurridos.

PER CURIAM: Kimberly Clark, Puerto Rico, Inc., se dedica al almacenamiento, distribución y venta de productos de papel, tales como servilletas, toallas de papel, papel sanitario y toallas sanitarias que manufactura Kimberly Clark International, S.A.

El 15 de enero de 1974 trece empleados[1] de Kimberly Clark, P.R., Inc., de los cuales sólo 5 trabajan en el almacén,

---

[1] Los nombres y puestos de los 13 querellantes son:

| NOMBRE | CLASIFICACION | DESDE | HASTA |
|---|---|---|---|
| a. Pedro Rodríguez Molina | "Warehouseman" | feb. 1965 | presente |
| b. Jorge L. Rodríguez | " | mayo 1960 | " |
| c. José Villanueva | " | oct. 1970 | " |
| d. José Reyes | " | agosto 1972 | " |
| e. Enrique Ventura Meran | "Janitor-Utility" | agosto 1972 | " |

radicaron una querella ante el Tribunal Superior reclamando salarios devengados y no satisfechos por 10 años durante los cuales Kimberly Clark P.R., Inc., no había cumplido con la Ley de Cierre de P.R. (33 L.P.R.A. sec. 2201 *et seq.*). La querellada alegó que las disposiciones de la Ley de Cierre no le aplicaban por ésta realizar labores esenciales a la manufactura de los productos, operaciones que fueron excluidas del ámbito de la ley.

Luego de llevar a cabo una inspección ocular de las operaciones manufactureras y comerciales de Kimberly Clark International S.A. y Kimberly Clark P.R., Inc., el Tribunal Superior, Sala de San Juan, Acevedo Colón, Juez resolvió que la Ley de Cierre cubría las operaciones de distribución y venta que realizaba Kimberly Clark P.R., Inc. Inconforme con esta determinación, solicitó la revisáramos. Accedimos.

Sostiene la recurrente que no opera un establecimiento comercial según lo define la Ley de Cierre y según fue interpretado en *Coca Cola* v. *Srio. del Trabajo*, 88 D.P.R. 340 (1963), que lo que realiza son ventas industriales las cuales están exentas de la aplicación de la ley.

El término "establecimiento comercial" incluye ". . . cualquier sitio en que se realicen operaciones mercantiles o actos de comercio, o en que se suministren facilidades, servicios,

| | | | |
|---|---|---|---|
| f. Marino Lebrón | Contable | set. 1969 | " |
| g. Luis Orlando Torres | "Bookkeeper" | sept. 1971 | " |
| h. Carmen Dávila | recepcionista clerk | abril 1971 | dic. 1973 |
| i. Ramón Muñiz | Operador IBM | mayo 1970 | presente |
| j. William González | Facturador y Key-punch operator | agosto 1970 | mayo 1974 |
| k. Matilde F. Frías | recepcionista y "accounts receivable clerk" | julio 1968 | presente |
| l. Carlota Esther Pastrana | "clerk del Dept. de crédito" | abril 1973 | " |
| m. Leonardo De León | "Warehouseman" | junio 1971 | " |

mercaderías o bienes, con ánimo de ganancia o por interés. . . ." 33 L.P.R.A. sec. 2201 (a) (3). La Ley exime de su cumplimiento a ciertos establecimientos como imprentas, periódicos, editoriales, cafés, restoranes, hoteles, casinos, salones de billar, mataderos, teatros, farmacias, lavanderías o *laundromats,* etc. En una enmienda aprobada en 1953, se eliminó de su aplicación a las industrias. (Ley Núm. 78 de 13 de junio de 1953.) (Véase *Diario de Sesiones* (1953), Vol. II, Tomo III, págs. 1610 y 1680 *et seq.*)

[1] Definimos en *Coca Cola,*[2] supra, un establecimiento comercial como un local, que no es parte esencial del negocio de manufactura, que usual o diariamente está destinado a la venta y distribución de artículos a clientes y compradores para realizar en el mismo transacciones de compra y venta.

■ Debido a que Kimberly Clark International, S.A., carece de almacenes para depositar la mercancía terminada,[3] ésta pasa diariamente su producción a Kimberly Clark P.R., Inc., la cual la deposita en sus almacenes. Mediante una operación en los libros de contabilidad de la recurrente la manufacturera vende a Kimberly Clark P.R., Inc., sus productos (Véase Acta de Inspección Ocular). El precio se fija a base del costo de manufactura de los productos (T.E., vista del 9 de diciembre de 1974, pág. 20). La manufacturera obtiene una ganancia mínima en esta transacción. Al pasar los productos a Kimberly Clark P.R., Inc., ésta los vende a mayoris-

---

[2] El caso de *Coca Cola Bottling* v. *Srio. del Trabajo,* supra, trataba de una sentencia declaratoria para dilucidar si los decretos mandatorios aplicables a los empleados de la manufacturera eran los mismos que les aplicaban a los empleados de los almacenes que la manufacturera tenía en la Isla. Se determinó que siendo los almacenes parte esencial del negocio de manufactura y no siendo, por lo tanto, una operación separada y distinta del mismo, aunque los almacenes estaban físicamente separados de la manufacturera, los decretos mandatorios aplicables a los empleados de los almacenes eran los mismos que los que les aplicaban a los de la manufacturera.

[3] La manufacturera solamente tiene un almacén en el que deposita la materia prima para la confección de sus productos.

tas, cadenas de supermercados, farmacias, médicos, pequeños comerciantes, a sus empleados, etc. El almacenaje, distribución y venta de los productos por la recurrente complementan la labor de manufactura constituyendo sus almacenes parte esencial de la fabricación por Kimberly Clark International, S.A.

En adición a las corporaciones complementarias en la fase de manufactura y distribución, ambas tienen también un alto grado de integración en otras áreas. Operan en dos edificios contiguos unidos entre sí en los cuales hay una sola oficina de trabajo clerical para ambas corporaciones. Los empleados que allí trabajan, algunos de ellos querellantes, trabajan lo mismo para una corporación que para la otra, no pudiéndose determinar el tiempo diario que dedican a la distribuidora o a la manufacturera. Existe un solo cuerpo gerencial para ambas corporaciones, al igual que un solo convenio colectivo, una unidad contratante y una sola unión que representa a los empleados de ambas.

■ La Ley de Cierre fue orientada para cubrir aquellos establecimientos comerciales que normalmente denominamos "tienda" cuyo mayor volumen de venta lo constituye las ventas al detal, o sea , al consumidor directamente. La recurrente no opera un negocio de este tipo. De hecho, su volumen de ventas al detal fue para 1974 un mero 2%, siendo el resto de su operación ventas al por mayor o industriales, las cuales son esenciales a la actividad de manufactura. Sus operaciones pues, no están cubiertas por la Ley de Cierre de Puerto Rico.

*Se revocará la sentencia recurrida y se dictará otra declarando sin lugar la querella radicada.*