**CC-1999-524** 1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Estado Libre Asociado de Puerto Rico, etc. Demandante-recurrido | Certiorari |
| v. | 2001 TSPR 120 |
| Frigorífico y Almacén del Turabo, Inc., etc. Demandados-recurrentes | 154 DPR ____ |

Número del Caso: CC-1999-524

Fecha: 28/agosto/2001

Tribunal de Circuito de Apelaciones:
                    Circuito Regional VI

Juez Ponente:
                    Hon. Carlos Soler Aquino

Abogado de la Parte Peticionaria:
                    Lcdo. José A. Andréu Fuentes

Oficina del Procurador General:
                    Lcda. María Adaljisa Dávila Vélez
                    Procuradora General Auxiliar

Materia: Revisión Administrativa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

**Estado Libre Asociado de
Puerto Rico, etc.**

  **Demandante-recurrido**

        **vs.**                    **CC-1999-524**      **CERTIORARI**

**Frigorífico y Almacén del
Turabo, Inc., etc.**

  **Demandados-recurrentes**

Opinión del Tribunal emitida por el Juez Asociado SEÑOR REBOLLO LÓPEZ

**San Juan, Puerto Rico, a 28 de agosto de 2001**

      **El 30 de octubre de 1997, la Oficina de Asuntos Monopolísticos del Departamento de Justicia de Puerto Rico presentó cinco (5) querellas ante el Departamento de Asuntos del Consumidor, en adelante DACO, contra Frigorífico y Almacén del Turabo, Inc. --corporación que realiza negocios bajo el nombre de Oscar Cash & Carry-- y contra Oscar Rivera, presidente de dicha Corporación. Según surge de las mencionadas querellas, el referido establecimiento alegadamente vendió productos "al detal, o al por menor", durante varios domingos[1], <u>antes de las once</u>**

---

[1] **Estos incidentes alegadamente ocurrieron los domingos 19 de diciembre de 1993, 2 de abril de 1995, 28 de mayo de 1995, 15 de septiembre de 1996 y 19 de octubre de 1997.**

de la mañana (11:00 a.m.); esto en violación a los siguientes estatutos: Ley Núm. 1 de 1 de diciembre de 1989 --en adelante Ley 1--; Ley Núm. 77 de 25 de junio de 1964 --en adelante Ley 77--; y el Reglamento Número VII sobre Competencia Justa.

En síntesis, la Oficina de Asuntos Monopolísticos solicitó del DACO que, además de ordenarle a los querellados cumplir con las leyes antes indicadas, le impusiera a la referida Corporación una multa administrativa de $10,000.00 más $2,000.00 de honorarios de abogado, y al señor Rivera una multa administrativa de $5,000.00 en su carácter personal, ello en cada uno de los cinco cargos imputados. El foro administrativo consolidó las querellas presentadas. Luego de varios trámites procesales, el 25 de febrero de 1999 el DACO emitió una resolución ordenando a la Corporación y al Sr. Rivera que cesaran de violar las leyes antes señaladas; además, impuso una multa administrativa a la Corporación por la cantidad de $50,000.00, más honorarios de abogado por $10,000.00, y una multa administrativa al Sr. Rivera por $25,000.00 en su carácter personal.

Denegada la reconsideración, el 25 de marzo de 1999 los querellados presentaron un recurso de revisión ante el Tribunal de Circuito de Apelaciones, aduciendo que erró el foro administrativo al resolver que la Ley 1 es aplicable al establecimiento; al concluir que tal legislación no adolece de vaguedad; al imponer multas administrativas exageradamente altas y en exceso a las permitidas por ley; y al imponer honorarios de abogado. El 28 de mayo de ese mismo año, el foro

apelativo intermedio dictó sentencia <u>confirmando</u> la resolución administrativa.

De esta sentencia los querellados acudieron ante este Tribunal, mediante recurso de *certiorari*, imputándole al foro apelativo intermedio haber errado:

> Primer error: "...al confirmar la decisión del foro administrativo a los efectos de que la ley de cierre le aplica a la recurrente, sin que dicha determinación estuviera sostenida por evidencia sustancial en el expediente administrativo.

> Segundo error: ...al resolver que la ley de cierre no es inconstitucional por adolecer de vaguedad.

> Tercer error: ...al confirmar las multas administrativas a pesar de ser éstas exageradamente altas, mayores a las permitidas por la ley vigente y por no proceder la imposición de honorarios de abogado."

El 10 de mayo de 2000, expedimos el auto y dictamos Sentencia confirmando al Tribunal Apelativo. El 24 de mayo, los querellados solicitaron reconsideración, la cual fue acogida por este Tribunal mediante Resolución emitida el 9 de junio. Contando con la comparecencia de todas las partes, resolvemos.

## I

El 1 de diciembre de 1989, la Asamblea Legislativa aprobó la Ley Núm. 1 conocida como "Ley para Regular las Operaciones de Establecimientos Comerciales". Esta ley derogó la antigua Ley de Cierre, con el propósito de "incorporar las transformaciones que han ocurrido en la sociedad puertorriqueña en los últimos años a la vez que se atempera

a la legislación laboral que se ha aprobado en las últimas décadas". Exposición de Motivos Ley 1. En esencia, esta ley pretende proteger a los trabajadores, proteger al comerciante de cláusulas contractuales que lo obliguen a abrir y ofrecerle a los consumidores opciones más amplias para hacer sus compras. *Id.*

El Artículo 5 de la Ley 1, 29 L.P.R.A. sec. 304, dispone que "[l]os establecimientos comerciales podrán abrir al público durante los días domingos <u>solamente</u> <u>durante el horario desde las 11:00 a.m. hasta las 5:00 p.m.</u>". (Énfasis nuestro.) Un establecimiento comercial se define como "cualquier local, tienda o lugar análogo en que se lleve a cabo cualquier tipo de operación comercial o actos de comercio de venta o transferencia de artículos <u>al por menor o al detalle o que combinen ventas al por mayor con ventas al por menor o al detalle</u>". (Énfasis nuestro.) 29 L.P.R.A. sec. 301.[2] De esta definición surge claramente que la Ley 1 no aplica a actividades comerciales destinadas de forma exclusiva a ventas al por mayor.


II

La citada Ley 1 <u>no</u> define los conceptos venta al por mayor y venta al por menor o al detalle. ¿Adolece dicha Ley del defecto de vaguedad? Creemos que no. Veamos por qué. Del

---

[2] Bajo la antigua Ley de Cierre, el término establecimiento comercial comprendía "cualquier sitio en que se reali[zaran] operaciones mercantiles o actos de comercio, o en que se suministr[aran] facilidades, servicios, mercaderías o bienes, con ánimo de ganancia o por interés". 33 L.P.R.A. sec. 2201. En consideración a esta definición, en <u>De León</u> v. <u>Kimberley Clark P.R., Inc.</u>, 105 D.P.R. 933, 937 (1977), expresamos que dicha legislación "fue orientada para cubrir aquellos establecimientos comerciales que normalmente denominamos 'tienda' cuyo mayor volumen de venta lo constituye las ventas al detal, o sea, al consumidor directamente."

historial legislativo no surge intención alguna del legislador de atribuirle un significado particular a los antes mencionados términos. En vista de ello, deberá observarse su significado común.[3]

El término venta al detal es uno de uso común,[4] el cual equivale a la expresión "*retail*" en el idioma inglés.[5] Este último, de acuerdo con el Webster's Third New International Dictionary of the English Language, significa "the sale of commodities or goods in small quantities to ultimate consumers". (Enfasis suplido.) Webster's Third New

---

[3] El Artículo 15 del Código Civil dispone que "[l]as palabras de una ley deben ser generalmente entendidas en su más corriente y usual significación". 31 L.P.R.A. sec. 15. Tal norma también predomina en la jurisdicción federal. Al respecto, se ha resuelto que cuando un estatuto no ofrece una definición particular para un término, ya sea para ampliarlo o restringirlo, habrá que atribuirle su significado ordinario. United States v. Redmond, 328 F.2d 707, 710 (1964) ("We recognize that if Congress desired to have its own words given some special meaning it could have done by including a definition of them in the act or possibly by saying that their words are subject to definition by appropriate administrative agencies."); Torti v. United States, 249 F.2d 623, 625 (1957) ("It is, of course, a fundamental and widely accepted rule that where a statute uses a word or term and does not define same, the courts must give such word or term its ordinary, plain and commonly accepted meaning.").

[4] El Tribunal de Apelaciones de los Estados Unidos ha señalado que el término venta al detal es uno de uso común, por lo que, en aquellos casos en que ha tenido que definir el mismo por no haber una definición estatutaria, ha adoptado su significado ordinario. Torti v. United States, 249 F.2d 623, 626 (1957). Para determinar dicho significado, es apropiado acudir a las definiciones provistas por los diccionarios. Bowe v. SMC Electrical Products, Inc., 945 F.Supl. 1482, 1484 (1996).

[5] El término "*retail*" se traduce al idioma español como "venta al por menor o al detalle". Diccionario Jurídico Inglés-Español Butterworths, Butterworths Legal Publishers, T. 1, 1991, pág. 539. Véase también New Revised Velásquez

International Dictionary of the English Language, Vol. II, 1971, pág. 1938.[6] Black's Law Dictionary lo define como: "The sale of goods or commodities to ultimate consumers, as opposed to the sale for further distribution or processing". Black's Law Dictionary, 7ma ed., West Group, 1999, pág. 1317. El American Heritage Dictionary provee el siguiente significado: "the sale of goods or commodities in <u>small</u> quantities to the <u>consumer</u>. […] To sell in <u>small</u> quantities <u>directly to</u> <u>consumers</u>". (Énfasis suplido.) The American Heritage Dictionary, 2nd College Edition, Houghton Mifflin Company, 1985, pág. 1054. En el Law & Commercial Dictionary se define como: "To sell by small quantities, in broken lots or parcels, not in bulk, directly to consumer." Law & Commercial Dictionary, West Publishing Company, 1985, pág. 469.

Por su parte, el Tribunal Supremo de los Estados Unidos ha expresado lo siguiente en cuanto al uso general del término "*retail*":

> "In general usage the noun 'retail' means 'The sale of commodities in small quantities or parcels;–opposed to *wholesale*.' The verb 'retail' means 'To sell in small quantities, as by the single yard, pound, gallon, etc.; to sell directly to the consumer; as to *retail* cloth or groceries.' Webster's New international Dictionary, Unabridged (2d ed, 1938).

---

Spanish and English Dictionary, Follett Publishing Company, 1974, pág. 565.

[6] El Webster's New World Diccionary of the American Language provee la siguiente definición: "the sale of goods or articles individually or in small quantities directly to the consumer". Webster's New World Diccionary of the American Language, 2nd College Edition, The World Publishing Company, 1970, pág. 1213.

> In the suggested use of the word 'retail' as opposed to the word 'wholesale,' a distinction appears not merely between the size and volume of the sales but between the types of purchasers." <u>Roland Electric Co.</u> v. <u>Walling</u>, 326 U.S. 657, 673 (1946).

A tenor con lo antes expuesto, forzosa resulta la conclusión de que el término venta o transferencia de artículos al por menor o al detalle se refiere a aquellos <u>establecimientos que destinan su actividad comercial a la venta de productos de forma individual o en pequeñas cantidades directamente al consumidor</u>.

En el presente caso, la prueba demostró que en el negocio en controversia <u>efectivamente</u> se llevaron a cabo, en cinco domingos distintos, ventas al detal antes de las 11:00 a.m.. A pesar de que solamente una pequeña sección del negocio se dedica a dicha actividad, el mismo es uno mixto; <u>debido a ello, está cubierto por la Ley 1</u>. Adviértase que dicha legislación no hace distinción alguna en cuanto a volumen de negocio, por lo que resulta impertinente que solamente una pequeña área del negocio se dedique a la venta de artículos al detal. Por consiguiente, concluimos que <u>técnicamente</u> se cometieron las violaciones imputadas.

Sin embargo, <u>no</u> debemos aplicar los términos de esta Ley de manera rígida e inflexible. Consideramos irrazonable decretar que un negocio como el del peticionario[7] --el cual se

---

[7] Según surge del expediente, la gran o inmensa mayoría de los productos ofrecidos para la venta por el referido establecimiento comercial están empacados en grandes porciones y generalmente en cajas con el obvio propósito de que los mismos sean vendidos al por mayor. Evidencia de ese propósito lo es que el almacén cuenta con un área de despacho

dedica, de manera principalísima, a la venta de productos al por mayor-- no pueda abrir sus puertas los domingos, antes de las 11:00 a.m., meramente por el hecho de que tenga una sección en que vende, de manera reducida, productos al detal. En nuestra opinión, un negocio en esas circunstancias <u>puede</u> abrir sus puertas los domingos antes de las 11:00 a.m.; lo que <u>no</u> puede hacer es vender productos al detal <u>antes</u> de dicha hora.

Tal conclusión es cónsona con lo dispuesto por el Artículo 6 de la Ley 1, 29 L.P.R.A. sec. 305,  el cual permite a un establecimiento comercial que efectúa operaciones exentas[8] y no exentas, realizar solamente las operaciones exentas y tomar "todas las precauciones que sean necesarias para impedir el acceso del público consumidor y evitar las operaciones no exentas durante las horas de cierre dispuestas" por dicha legislación.

---

de mercancía para que los clientes puedan colocar sus vehículos de carga cerca del área de cobro. Debe señalarse, además, que el negocio cuenta con <u>licencias como mayorista</u>; entre ellas: licencia expedida por el Departamento de Agricultura Puerto Rico para actuar como importador, almacenista, representante y/o <u>comerciante al por mayor en huevos</u>; licencia expedida por el Departamento de Agricultura para actuar como importador, almacenista y <u>mayorista en carne de aves</u>; licencia expedida por el Departamento de Hacienda para vender <u>cigarrillos al por mayor</u>; licencia expedida por el Departamento de Hacienda para <u>importar bebidas alcohólicas</u>; licencia expedida por el Departamento de Salud para <u>traficar medicamentos al por mayor</u>. Asimismo, el referido negocio ha sido clasificado por diversas empresas como negocio al por mayor, entre las cuales figuran: Procter & Gamble; Orange Crush of Puerto Rico; Ballester Hermanos, Inc.; Borden Puerto Rico Group; Cadierno Corp.; Destilería Serrallés, Inc.; Banco Popular de Puerto Rico; y Banco Santander Puerto Rico.

[8] El Artículo 6 de la Ley 1 contiene un listado de actividades que no están sujetas a las disposiciones sobre apertura y cierre contenidas en la misma. 29 L.P.R.A. sec. 305.

Por último, en cuanto al señalamiento de error sobre vaguedad, debemos indicar que el hecho de que una ley requiera interpretación no la hace nula. Aun las leyes más claras requieren interpretación. Pueblo v. Echevarría Rodríguez I, 128 D.P.R. 299, 370-71 (1991). A tenor con estos principios, concluimos que la Ley 1 no adolece de vaguedad.

III

Los querellados aducen, además, que las multas administrativas impuestas son excesivas y mayores a las permitidas por la ley vigente, y que no proceden los honorarios de abogado impuestos. Examinamos los mencionados planteamientos:

A

La Ley 1 reconoce dos acciones: una criminal y una administrativa. De una parte, dispone que su incumplimiento constituye un delito menos grave el cual apareja una pena de multa, reclusión o ambas. De otro lado, establece que toda infracción a sus disposiciones constituirá también una práctica o método injusto y desleal de competencia, dando base a una acción administrativa que podría conllevar una multa administrativa. 29 L.P.R.A. sec. 310. Inicialmente, tanto la multa criminal como la administrativa podían fluctuar entre $5,000.00 y $50,000.00. No obstante, el 31 de diciembre de 1997 fue aprobada la Ley Núm. 212 la cual tuvo el efecto, entre otras

cosas, de reducir los límites de ambas multas entre $1,000.00 y $25,000.00.

En el caso ante nuestra consideración, tanto las querellas presentadas, como los hechos que dan base a éstas, ocurrieron en fecha anterior a la enmienda antes señalada. Sin embargo, los querellados aducen que por ser la Ley 1 un estatuto criminal o quasi-criminal, procede la imposición de la pena más benigna al momento de dictarse la resolución o sentencia, ello de conformidad con el Artículo 4 del Código Penal. Este artículo dispone:

> "Las leyes penales no tienen efecto retroactivo, salvo en cuanto favorezcan a la persona imputada de delito.
>
> Si la ley vigente al tiempo de cometerse el delito fuere distinta de la que exista al imponerse la sentencia, se aplicará siempre la más benigna.
>
> Si durante la condena se aprobare una ley más benigna en cuanto a la pena o al modo de ejecución la misma se limitará a lo establecido por esa ley.
>
> En los casos de la presente sección los efectos de la nueva ley operarán de pleno derecho." 33 L.P.R.A. sec. 3004.

Como indicáramos previamente, la Ley 1 reconoce dos acciones: la criminal y la administrativa. La primera de ellas, será juzgada, como toda acción criminal, en el foro judicial. Por su parte, la acción administrativa será tramitada por la Oficina de Asuntos Monopolísticos ante el DACO. 29 L.P.R.A. sec. 310. En el caso de la primera acción, no cabe duda que le es de aplicación el Artículo 4 del Código Penal, pues este artículo aplica a toda legislación criminal, ya sea ésta de carácter general o especial. Véase Art. 5 del Código Penal,

33 L.P.R.A. sec. 3005. De otro lado, la segunda acción reconocida por la Ley 1 es de naturaleza administrativa razón por la cual no le aplica dicha norma. La acción ante nuestra consideración fue instada por la vía administrativa; esto es, la segunda acción reconocida por la Ley 1. Por lo tanto, no está cubierta por el Artículo 4 del Código Penal.

Además, del historial legislativo de la Ley Núm. 212 no surge intención alguna del legislador de hacerla efectiva retroactivamente. Por el contrario, el Artículo 5 de esta legislación dispone expresamente que la misma "comenzará a regir a los noventa (90) días después de su aprobación".[9]

Por los fundamentos antes expuestos, no procede la aplicación retroactiva de la ley Núm. 212 de 31 de diciembre de 1997.

B

Los querellados peticionarios aducen, además, que la multa impuesta a la Corporación es una exageradamente alta. Es norma reiterada por este Tribunal que las agencias administrativas gozan de una amplia discreción en cuanto a la imposición de sanciones, pues ellas son las "que, día a día implanta[n] la ley orgánica y los reglamentos y [son] la[s]

---

[9] El artículo 3 del Código Civil, 31 L.P.R.A. sec. 3, establece, como norma general, que las leyes no tendrán efecto retroactivo, a menos que se exprese lo contrario. La intención del legislador dándole efecto retroactivo a una ley debe aparecer claramente. No es necesario que se indique de manera expresa, sino que será suficiente que de su lenguaje surja claramente. R. E. Bernier y J. Cuevas Segarra, Aprobación e

que, por su conocimiento, está[n] en mejor posición de establecer cuál es el efecto de la violación, sobre todo en el sector reglamentado". <u>Associated Insurance Agencies, Inc.</u> v. <u>Comisionado de Seguros de P.R.</u>, res. el 26 de noviembre de 1997, 97 JTS 142, pág. 333. <u>De ordinario, la revisión judicial de este tipo de actuación administrativa se limita a evaluar si los administradores actuaron ilegal o arbitrariamente al imponer la sanción</u>. Debemos decidir, en consecuencia, si en el presente caso la actuación de la agencia, al imponer una multa de $50,000.00 a la Corporación, fue, o no, una arbitraria.

Según expresáramos anteriormente, el negocio en controversia opera, <u>de manera principalísima</u>, como uno de ventas al por mayor, dedicando solamente una <u>reducida sección</u> a la venta de artículos al por menor. Véase escolio 7. Además, <u>no</u> surge del expediente que los querellados hayan sido acusados previamente --criminal ni administrativamente-- por violar dicha legislación. Obsérvese también que la Oficina de Asuntos Monopolísticos <u>decidió radicar todas las querellas en una misma fecha</u>, ello no obstante haber transcurrido cerca de cuatro años desde la primera infracción hasta la última.

En consecuencia, concluimos que el DACO actuó de forma arbitraria al imponer una multa irrazonable y excesiva ante los hechos particulares del caso. <u>Debido a ello, entendemos procedente reducir la multa administrativa impuesta a</u>

---

<u>Interpretación de las Leyes en Puerto Rico</u>, 2da ed., Publicaciones JTS, pág. 391.

<u>Frigorífico y Almacén del Turabo, Inc. a la cantidad total de</u>

<u>$25,000.00.</u>[10]

---

[10] Entendemos procedente <u>enfatizar</u> el hecho de que la Oficina de Asuntos Monopolísticos del Departamento de Justicia le imputó al peticionario cinco (5) infracciones, alegadamente cometidas los domingos 19 de diciembre de <u>1993</u>, 2 de abril de <u>1995</u>, 28 de mayo de <u>1995</u>, 15 de septiembre de <u>1996</u> y 19 de octubre de <u>1997</u>. <u>Esto es, dicha agencia acumuló cinco (5) infracciones alegadamente cometidas en un período aproximado de cuatro (4) años</u>.

Somos del criterio que <u>no</u> debemos de avalar esa actuación del Departamento de Justicia. <u>No</u> debemos perder de vista que esta facultad que posee dicha agencia tiene el propósito --además del de castigar al que ha violado la ley-- de <u>advertir</u> a la persona que está violando la ley y, así, el de <u>disuadir</u> a ésta de volverlo a hacer y, <u>además</u> de <u>corregir</u> una situación.

Si permitimos que se actúe en la forma que se hizo en el presente caso, esto es, <u>cruzarse</u> de brazos durante cuatro años y <u>limitarse a acumular</u> violaciones, <u>podríamos estar fomentando una indeseable práctica que puede, incluso, causar la quiebra de un negocio en particular</u>; ello así ya que, a manera de ejemplo, si el referido Departamento acumula diez (10) violaciones durante un largo período de tiempo, el negocio podría estar sujeto a pagar hasta un máximo de $500,000.00, esto es, a $50,000.00 por violación.

<u>No</u> podemos perder de vista, además, que en el presente caso existía una controversia legítima sobre si al negocio en controversia le aplicaba, o no, la Ley de Cierre, <u>razón por la cual el Departamento de Justicia debió actuar, y radicar querella, lo más pronto posible y no esperar cuatro (4) años para hacerlo</u>.

Tenemos, además, que según expresáramos previamente, la Ley Núm. 212 de 1997 tuvo el efecto, entre otras cosas, de <u>reducir</u> los límites de las multas administrativas entre $1,000.00 y $25,000.00. Tal reducción estuvo basada en lo <u>ridículamente excesivas</u> que resultaban las cuantías dispuestas por la Ley 1. Véase Diario de Sesiones del Senado de Puerto Rico, Decimotercera Asamblea Legislativa, Vol. XLVIII, Núm. 52, 17 de junio de 1997, pág. 3087. Esto es, el propio legislador reconoció a través de esta acción lo <u>exageradas y absurdas</u> que eran las multas autorizadas por la Ley 1.

C

Además de la sanción impuesta a la Corporación, el DACO impuso una "multa administrativa" de $25,000.00 al Sr. Rivera en su carácter personal, por violación al artículo 9 de la Ley Núm. 77, ante, conocida como "Ley de Monopolios de Puerto Rico". Dicho artículo dispone:

> "Cuando una corporación o entidad legal viole cualquiera de las disposiciones de este Capítulo, los directores, oficiales, síndicos, administradores o agentes de dicha corporación o entidad legal que hubieren autorizado, ordenado o cometido los actos constitutivos de tal violación también estarán sujetos, en su carácter personal a las penalidades especificadas en este Capítulo para tal violación, pero en tal caso, aunque la pena de prisión señalada les será aplicable, la multa no será menor de dos mil quinientos (2,500) dólares ni mayor de veinticinco mil (25,000) dólares." (Énfasis nuestro.) 10 L.P.R.A. sec. 265.

En esencia, esta disposición sujeta a las personas encargadas de la corporación a las penalidades establecidas en el Artículo 10 de dicha legislación,[11] pero reduciendo los límites de las multas autorizadas. Tales penalidades no son de naturaleza administrativa, sino criminal pues las mismas

---

El propósito de la referida Ley, repetimos, no es el de perseguir y quebrar un negocio; el mismo es el de velar porque se cumpla la ley y corregir una situación.

[11] Este artículo establece:

Sec. 266. Penalidades

> "Cualquier persona que viole las secs. 258, 260, 263(f) o 264 de este título será culpable de delito menos grave y convicta que fuere será castigada con una multa que no será menor de cinco mil (5,000) dólares ni mayor de cincuenta mil (50,000) dólares, o con prisión que no excederá de un (1) año o con ambas penas a discreción del tribunal.

constituyen un delito menos grave. Debido a ello, concluimos que el DACO carecía de autoridad para imponer tal multa, pues, de conformidad con el artículo 13 de la Ley 77, 10 L.P.R.A. sec. 269, "[e]l Tribunal de Primera Instancia [tiene] autoridad exclusiva para entender en los procesos criminales por violación a este Capítulo". (Énfasis nuestro.)

D

Finalmente, procedemos a considerar los honorarios de abogado impuestos por el DACO a la Corporación bajo la Ley Núm. 10 de 20 de marzo de 1972. La sección 1 de esta legislación decreta: "En todas las acciones que para protección de los consumidores instaren ante nuestros tribunales y los tribunales federales, la Administración de Servicios al Consumidor y la Oficina de Asuntos Monopolísticos del Departamento de Justicia, podrán dichas agencias recuperar costas y honorarios de abogado." 23 L.P.R.A. sec 1016(a). Según surge del texto, esta ley solamente permite recuperar costas y honorarios de abogado en aquellas acciones que hayan sido instadas ante cualquier tribunal de Puerto Rico o federal. En el caso ante nos, la Oficina de Asuntos Monopolísticos no presentó su acción ante un tribunal sino ante el DACO, por lo que no procede la concesión de costas ni honorarios de abogado bajo esta medida.[12]

---

Las personas acusadas poro infringir las secciones anteriormente mencionadas tendrán derecho a juicio por jurado."

[12] Además, para que proceda la imposición del pago total o parcial de los gastos incurridos en la tramitación de una

IV

Por los fundamentos antes expresados, procede dictar Sentencia <u>modificatoria</u> de la emitida por el Tribunal de Circuito de Apelaciones a los efectos de: reducir la multa administrativa impuesta a Frigorífico y Almacén del Turabo, Inc., a la suma de $25,000.00; eliminar los honorarios de abogado impuestos a la referida Corporación; y eliminando la "multa administrativa" impuesta al señor Oscar Rivera, en su carácter personal.

Se dictará Sentencia de conformidad.

FRANCISCO REBOLLO LOPEZ
Juez Asociado

---

querella a la parte perdidosa --esto cuando la querella ha sido declarada con lugar--, deberá establecerse que dicha parte procedió con temeridad. 3 L.P.R.A. sec. 341e(c). En el caso de autos, no se ha establecido que los querellados hayan actuado con temeridad, por lo que tampoco procedían los honorarios de abogado bajo esta disposición.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

**Estado Libre Asociado de Puerto Rico, etc.**

   **Demandante-recurrido**

            **vs.**                    CC-1999-524        CERTIORARI

**Frigorífico y Almacén del Turabo, Inc., etc.**

   **Demandados-recurrentes**

SENTENCIA

**San Juan, Puerto Rico, a 28 de agosto de 2001**

**Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia modificatoria de la emitida por el Tribunal de Circuito de Apelaciones en el presente caso reduciendo la multa administrativa impuesta a Frigorífico y Almacén del Turabo, Inc., a la suma de $25,000.00; eliminando los honorarios de abogado impuestos a la referida Corporación; y eliminando la "multa administrativa" impuesta al señor Oscar Rivera, en su carácter personal.**

**Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Hernández Denton emitió Opinión de conformidad. El Juez Presidente señor Andréu García inhibido. El Juez Asociado señor Fuster Berlingeri no intervino.**

                              **Isabel Llompart Zeno**
                               **Secretaria del Tribunal Supremo**

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Estado Libre Asociado de
Puerto Rico, etc.

    Demandante-Recurrido

      vs.                 CC-1999-524     Certiorari

Frigorífico y Almacén del
Turabo, Inc., etc.

    Demandado-Recurrentes

Opinión de Conformidad emitida por el Juez Asociado señor Hernández Denton

San Juan, Puerto Rico, a 28 de agosto de 2001.

En esta ocasión nos enfrentamos a un caso en el cual los peticionarios alegan que unas multas impuestas por el Departamento de Asuntos del Consumidor (en adelante "DACO") son ilegales y arbitrariamente altas. Por entender que la multa principal es excesiva y se debe reducir; y que la multa al señor Oscar Rivera en su carácter personal y la imposición de honorarios de abogado no están permitidas por ley, estamos conformes con la Opinión del Tribunal.

I

La Oficina de Asuntos Monopolísticos del Departamento de Justicia de Puerto Rico presentó

cinco (5) querellas ante el DACO contra Frigorífico y Almacén del Turabo, Inc. (en adelante "Frigorífico") y contra el señor Oscar Rivera, presidente de dicha corporación, por haber vendido productos al detal durante varios domingos antes de las once de la mañana (11:00 a.m.) en violación a la Ley Núm. 1 de 1 de diciembre de 1989 (Ley para Regular las Operaciones de Establecimientos Comerciales), a la Ley Núm. 77 de 25 de junio de 1964 (Ley de Monopolios), y al Reglamento Núm. VII sobre Competencia Justa. El DACO emitió una resolución ordenando a Frigorífico y a Rivera que cesaran de violar las leyes y el reglamento antes señalados. Además, el foro administrativo impuso una multa administrativa a Frigorífico de $50,000.00, más $10,000.00 por honorarios de abogado, y una multa administrativa a Rivera de $25,000.00 en su carácter personal.

Denegada la reconsideración, los querellados presentaron un recurso de revisión ante el Tribunal de Circuito de Apelaciones aduciendo que la Ley Núm. 1 no es aplicable al establecimiento, que dicha ley adolece del defecto de vaguedad, que las multas administrativas impuestas son exageradas y en exceso a lo permitido por ley, y que no procede imponer honorarios de abogado. El foro apelativo confirmó la resolución administrativa.

Inconformes, los querellados acudieron ante nos repitiendo las alegaciones que hicieran ante el foro apelativo. Este Tribunal dictó Sentencia confirmando al Tribunal de Circuito de Apelaciones. Los querellados solicitaron reconsideración y la misma fue acogida por este Tribunal.

II

En primer lugar, los peticionarios alegan que la Ley Núm. 1 es inconstitucionalmente vaga. Las prohibiciones de dicha Ley aplican, por sus propios términos, a los comercios que se dedican a la venta de productos al detal, y a aquellos que combinan las ventas al detal y al por mayor. 29 L.P.R.A. sec. 301. Los términos "al detal" y "al por mayor" no se definen en la Ley. Estamos conformes con la conclusión a la que llega la Opinión del Tribunal de que esto no hace la Ley nula por vaguedad. "[E]l hecho de que una ley requiera interpretación no la hace nula". Opinión del Tribunal

en la pág. 9. En casos como éste, se debe observar el significado común de las palabras utilizadas por la Asamblea Legislativa. 31 L.P.R.A. sec. 15.

De igual manera, estamos conformes con la determinación mayoritaria de que la Ley Núm. 1 es de aplicación a Frigorífico. La prueba demuestra que dicho negocio efectuó ventas al detal en cinco domingos distintos. Por lo tanto, es forzoso concluir que, aunque la mayor parte del negocio está dedicado a la venta de productos al por mayor, Frigorífico es un local donde se vende también al detal. La Ley Núm. 1 aplica, como mencionáramos anteriormente, tanto a los establecimientos que se dedican exclusivamente a la venta al detal, como a los negocios mixtos.

### III

Establecido que las prohibiciones de la Ley Núm. 1 son aplicables a Frigorífico, y que dicho negocio vendió productos al detal los cinco domingos en cuestión fuera del horario establecido en dicha Ley, procede la imposición de multas administrativas. En primer lugar, cabe mencionar que estamos conformes con la conclusión mayoritaria de que las disposiciones relativas a las multas administrativas aplicables al caso de autos son las establecidas en la Ley Núm. 1 **antes de la enmienda del 31 de diciembre de 1997**. Los hechos de los que surge esta querella ocurrieron mientras estaban vigentes las disposiciones originales. Al no ser éste un procedimiento criminal, no es de aplicación el Artículo 4 del Código Penal. No procede, pues, la aplicación retroactiva de la enmienda que establece multas más benignas.

Sabido es que el rol de los tribunales al revisar las actuaciones administrativas no es ilimitado. A estos efectos, la sección 4.5 de la Ley de Procedimiento Administrativo Uniforme recoge la norma tradicional que establece que los tribunales respetarán las determinaciones de hecho de las agencias sostenidas por evidencia sustancial. 3 L.P.R.A. sec. 2175. De igual forma, los tribunales deben brindar deferencia a las conclusiones de derecho que haga una agencia al interpretar los estatutos que rigen sus actuaciones. Associated Insurance Agencies, Inc. v. Comisionado de Seguros de Puerto Rico, res. el 26 de noviembre de 1997, 144 D.P.R.___ (1997). Esta norma es de particular importancia cuando la agencia incurre en el pleno ejercicio

del presunto conocimiento especializado que posee en el área específica que regula.  Id.

En los casos en que una agencia impone sanciones por la violación de las leyes y reglamentos que dicha agencia administra "se le reconoce mucha discreción para seleccionar las sanciones que le ayuden a cumplir con los objetivos estatutarios, siempre que haya obrado dentro del marco de su conocimiento especializado y de la ley." Id. Esta ha sido también la doctrina del Tribunal Supremo federal. En Butz v. Glover Live Stock Co., por ejemplo, el Tribunal Supremo de los Estados Unidos, al reinstalar una sanción impuesta por el Secretario de Agricultura que el Tribunal Apelativo consideró muy severa, expuso: "The applicable standard of judicial review in such cases required review of the Secretary's order according to the 'fundamental principle... that where Congress has entrusted an administrative agency with the responsibility of selecting the means of achieving the statutory policy 'the relation of remedy to policy is peculiarly a matter for administrative competence.'" Butz v. Glover Live Stock Co., 411 U.S. 182, 185 (1973) (*cita omitida*).

"Bajo esta doctrina si la decisión administrativa está basada en evidencia sustancial y no es *ultra vires* y tiene además una relación razonable con los actos que se quieren prohibir, los tribunales brindarán considerable deferencia a la sanción impuesta por las agencias." Associated Insurance, supra. El tribunal no debe, en estos casos, sustituir su criterio por el de la agencia. Id. No basta con que el tribunal piense que la sanción es muy fuerte. Id. "The court may decide only whether under the pertinent statute and relevant facts, the Secretary made 'an allowable judgment in [his] choice of the remedy'". Butz, supra, en la pág. 189 (*cita omitida*). Lo que le compete al tribunal es asegurar que las agencias no actúen ilegalmente ni cometan arbitrariedades al imponer sanciones. La jurisprudencia de la mayoría de las jurisdicciones de los Estados Unidos coincide con estos criterios. Véase, Lillis v. 99 Department of Health Services, 564 A.2d. 646, 649 (Conn.  Super. 1989); Bonnesville Ins. Co. v. Insurance Div., 632 P.2d. 796 (Ore. 1981); Hunt v. Washington Fire & Marine

Insurance Co., 381 P.2d. 844 (Oklahoma, 1963). Esta doctrina "[t]ambién es aplicable a los procedimientos mediante los cuales una agencia impone penalidades por violación de un estatuto o reglamento que establece las normas que rigen esa industria o negocio." Associated Insurance, supra.

En el caso de autos nos enfrentamos a una situación en la cual una agencia impuso una multa administrativa por violaciones a la ley que dicha agencia está encargada de administrar. Como regla general, los tribunales deben brindar deferencia a este tipo de determinación administrativa. Sin embargo, estamos de acuerdo con la Opinión del Tribunal en cuanto a que en este caso existen circunstancias que justifican que reconsideremos la multa administrativa impuesta a Frigorífico. No podemos ser deferentes a la determinación administrativa cuando la misma conllevaría una injusticia. En esta ocasión, la actuación administrativa es contraria a los propósitos fundamentales de la Ley Núm. 1 y a las nociones básicas de justicia.

En primer lugar, surge del expediente que Frigorífico se dedica mayormente a las ventas al por mayor, y que no hubo prueba de que hubiera incurrido en violaciones a la Ley Núm. 1 anteriormente. Estos son factores atenuantes.

Además, como menciona la Opinión del Tribunal en el escolio 10, la manera en que la Oficina de Asuntos Monopolísticos fiscalizó la conducta de Frigorífico en esta ocasión justifica que reduzcamos la multa impuesta por el DACO. Dicha Oficina esperó y estuvo al acecho de Frigorífico por un periodo de cuatro (4) años. Durante este periodo acumuló cinco (5) violaciones a la Ley Núm. 1 en ocasiones distintas. Nos preocupa que la Oficina de Asuntos Monopolísticos no decidiera instituir el proceso correspondiente después de la primera o la segunda violación. Dicha Oficina ni tan siquiera le advirtió a Frigorífico que estaba violando la Ley. Estamos de acuerdo con la Opinión del Tribunal en que no debemos avalar esta manera de ejecutar la Ley Núm. 1, pues estos métodos constituyen una práctica

contraria al interés público que podría ser utilizada por funcionarios inescrupulosos para fiscalizar selectiva y discriminatoriamente.[13]

Además, debemos recordar que la referida Ley no sólo tiene el propósito de castigar cierta conducta, sino también de disuadir y corregir la conducta prohibida. La manera en que procedió la Oficina de Asuntos Monopolísticos en este caso frustra dichos propósitos, pues no le advierte a la persona que alegadamente está violando la Ley que su comportamiento está prohibido. En algunos casos, sólo una advertencia bastaría para corregir la situación. Por otra parte, al quedarse de brazos cruzados por cuatro (4) años, la Oficina permitió que se siguieran cometiendo violaciones a la Ley que quizás pudieron haber sido evitadas si se hubiese procesado a los peticionarios desde la primera violación.

También estamos de acuerdo con la Opinión del Tribunal en cuanto al peligro que puede constituir esta práctica para nuestra economía. Al acumularse violaciones de esta manera, se puede llegar a una situación en la cual las multas impuestas sean tan onerosas que lleven a un negocio a la quiebra. Entendemos que este proceder no constituiría buena política pública, y sería injusto con las personas y las empresas reglamentadas. Además, entendemos sería contrario al propósito fundamental de la Ley Núm. 1. Por lo tanto, estamos conformes con la reducción de la multa administrativa impuesta a Frigorífico.

IV

Por último, estamos conformes, también, con la Opinión del Tribunal en cuanto a la multa impuesta al señor Oscar Rivera en su carácter personal, y en cuanto a la imposición de honorarios de abogado. Como surge diáfanamente de la Opinión del Tribunal, el DACO no gozaba de facultad legal para imponer ni la multa al señor Oscar Rivera ni los honorarios. La multa a Rivera bajo la Ley de Monopolios sólo procede como sanción penal a ser impuesta exclusivamente por el Tribunal de Primera Instancia tras un procedimiento criminal en el cual el acusado tiene derecho a juicio por jurado. 10 L.P.R.A. secs. 265, 266 y 269.

_____

Por otra parte, los honorarios de abogado concedidos bajo la Ley 10 de 20 de marzo de 1972 tampoco proceden en el caso de autos. Dicha Ley sólo autoriza a los tribunales de Puerto Rico y a los tribunales federales a conceder honorarios de abogado en aquellas acciones instadas ante ellos. 23 L.P.R.A. sec. 1016(a). En el caso de autos, la querella se presentó ante el DACO, y no ante un tribunal. Además, no surge del expediente ninguna prueba de que los peticionarios hayan incurrido en ningún tipo de conducta temeraria. Por lo tanto, se debe revocar la concesión de honorarios de abogado.

V

Por todos los fundamentos antes expuestos, estamos conformes con la Opinión del Tribunal, su interpretación de la Ley Núm. 1 y su conclusión de que dicha Ley no es nula por vaguedad; con la reducción de la multa administrativa impuesta a Frigorífico; y con la determinación mayoritaria de eliminar la multa al señor Oscar Rivera en su carácter personal y revocar la concesión de honorarios de abogado.


Federico Hernández Denton
Juez Asociado

---

[13] Cabe mencionar que en este caso no se presentó evidencia de conducta discriminatoria.