# 2008 DTA 109

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN
PANEL I**

ESTADO LIBRE ASOCIADO DE PUERTO RICO
Recurrida

v.

FAJARDO SERVICE STATION INC., H/N/C TEXACO STAR MART
Y WILLIAM ALVERIO
Recurrentes

Núm. KLRA-2007-00940

San Juan, Puerto Rico, a 29 de agosto de 2008

Panel integrado por su Presidente, el Juez Ramírez Nazario,
y los Jueces Piñero González y González Vargas

Ramírez Nazario, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece Fajardo Service Station Inc. y el señor William Alverio (la parte recurrente) para solicitar la revocación de la Resolución emitida el 8 de agosto de 2007 y notificada el 13 de agosto de igual año por el Departamento de Asuntos del Consumidor (DACO). Mediante la referida Resolución, el DACO resolvió que la parte recurrente había infringido la Ley Núm. 1 de 1 de diciembre de 1989 (Ley de Cierre) y le impuso una multa de $5,000 más $500 por costas y honorarios de abogado.

Considerado el recurso presentado y los documentos que lo acompañan a la luz del derecho aplicable, resolvemos confirmar la Resolución recurrida.

### I

El 14 de septiembre de 2006, el Estado Libre Asociado de Puerto Rico (ELA), por vía de la Oficina de Asuntos Monopolísticos del Departamento de Justicia, presentó una querella ante el DACO contra la parte recurrente. Le atribuyó haber violado la Ley de Cierre al alegar que mientras operaba su estación de gasolina el domingo 22 de enero de 2006, a las 9:10 de la mañana, le vendió al agente David Alnaldy una cerveza, artículo no exento de las prohibiciones de la Ley de Cierre. Así le imputó infracciones a los artículo 5 y 6 de la Ley de Cierre, al Artículo 3(a) de la Ley Núm. 77 de 25 de junio de 1964 (Ley de Monopolios) y los artículos II y IV, inciso 32 del Reglamento Sobre Competencia Justa Núm. VII, Reglamento 2648 del Departamento de Justicia de 29 de mayo de 1980. El ELA solicitó que le impusieran $5,000 como penalidad, más el pago de costas y honorarios de abogado a la parte recurrente.

El 15 de mayo de 2007 se celebró la vista administrativa. Tras la presentación de la prueba y argumentación de las partes, el Juez Administrador solicitó la presentación de proyectos de resolución en los que discutieran los planteamientos de derecho señalados por la parte recurrente.

Cumplida la orden, el 8 de agosto de 2007, el DACO emitió Resolución. Resolvió:

*"Examinadas todas la alegaciones de la parte querellante, es forzoso concluir que las actuaciones de la parte querellada constituyen violaciones al Art. 6(f) de la Ley de Cierre, id., dado el hecho que el tener siete (7) empleados en su nómina semanal no exime al querellado del cumplimiento con las disposiciones de la Ley que prohíben la venta dominical de alcohol dentro del horario establecido por Ley a las estaciones de gasolina. De igual manera, el querellado falló en su intento de probar que la tienda de conveniencia es un comercio separado de la estación, dado a que la evidencia documental claramente establece que dicha tienda de conveniencia es parte integral de dicha estación de gasolina. Los hechos probados en este caso y la evidencia presentada por la parte querellante establecen la violación imputada en la querella. Con relación a la facultad de este foro de imponer honorarios y costas de abogado, dicha facultad ha sido plenamente otorgada a este foro por nuestro ordenamiento y jurídico y queda dentro de las disposiciones aplicables a querellas presentadas ante este Foro, según la `Regla 26.3 del Reglamento de Procedimientos Adjudicativos del Departamento de Asuntos del Consumidor de octubre de 2000 y de la Regla 44 de Procedimiento Civil."*

Así le impuso a la parte recurrente una multa de $5,000 y $500 por costas y honorarios de abogado.

**II**

Inconforme, la parte recurrente acude ante nos y señala como errores:

*"Primer error: Erró DACO al determinar que FSS incurrió en violación a la " Ley Para Regular las Operaciones de los Establecimientos Comerciales", Ley Número 1 de 1 de diciembre de 1989, según enmendada, ya que por disposición de la misma ley, en su Artículo 6 (b), la citada ley no aplica a los negocios que sean propiedad de personas naturales o jurídicas y que no tengan más de siete (7) empleados en su nómina semanal.*

*Segundo error: Erró DACO en imponer costas y honorarios de abogado en el presente caso, ya que no hubo temeridad del querellado y es improcedente la imposición de honorarios de abogado en el presente caso, ya que por haber escogido el proceso administrativo para radicar su querella, la Oficina de Asuntos Monopolísticos no tiene derecho a los honorarios de abogado solicitados."*

**III**

El 1 de diciembre de 1989, la Asamblea Legislativa aprobó la *"Ley para Regular las Operaciones de Establecimientos Comerciales"*. Esta ley derogó la antigua Ley de Cierre, con el propósito de *"incorporar las transformaciones que han ocurrido en la sociedad puertorriqueña en los últimos años a la vez que se atempera a la legislación laboral que se ha aprobado en las últimas décadas"*. Exposición de Motivos Ley Núm. 1 de 1 de diciembre de 1989, 29 L.P.R.A. sec. 301 *et seq*, en adelante Ley de Cierre. Esta ley pretende proteger a los trabajadores, proteger al comerciante de cláusulas contractuales que lo obliguen a abrir y ofrecerle a los consumidores opciones más amplias para hacer sus compras. *Id.*

El Artículo 5 de la Ley de Cierre, 29 L.P.R.A. 304, dispone que *"[l]os establecimientos comerciales podrán abrir al público durante los días domingos solamente durante el horario desde las 11:00 a.m. hasta las 5:00 p.m."*. Un establecimiento comercial se define como *"cualquier local, tienda o lugar análogo en que se lleve a cabo cualquier tipo de operación comercial o actos de comercio de venta o transferencia de artículos al por menor o al detalle o que combinen ventas al por mayor con ventas al por menor o al detalle"*. 29 L.P.R.A. sec. 301

El Artículo 6 de la Ley de Cierre, 29 L.P.R.A. 305, contiene un listado de los establecimientos comerciales exceptuados de cumplir con los preceptos de dicha ley. La disposición estatutaria, en lo pertinente, expresa lo siguiente:

*"No estarán sujetos a las disposiciones sobre apertura y cierre señaladas en las secs. 302, 303 y 304 de este título los siguientes establecimientos comerciales:*

*(a) Los operados exclusivamente por sus propios dueños, sus parientes dentro del segundo grado por [de] consanguinidad o afinidad.*

*(b) Los que sean propiedad de personas naturales o jurídicas y que no tengan más de siete (7) empleados en su nómina semanal, pero sujetos a las disposiciones y penalidades de las secs. 307, 308 y 310 de este título. (Énfasis nuestro).*

*(c) Los ubicados en lugares dedicados exclusivamente al desarrollo de actividades culturales, artesanales, recreativas o deportivas, cuyos artículos de ventas estén relacionados con la actividad que se realiza en el lugar.*

*(d) Los dedicados principalmente a la elaboración de alimentos y venta directa al público de comidas confeccionadas u otros alimentos, incluyendo restaurantes, cafés, fondas, panaderías, reposterías y empresas donde solamente se vende leche, café confeccionado, hielo, mantecados, helados o dulces.*

*(e) ...*

*(f) Las estaciones de gasolina y los establecimientos comerciales ubicados en las mismas o establecimientos que tengan operación similar a éstos, cuya área de ventas no exceda de trescientos cincuenta (350) metros cuadrados, pero limitadas sus ventas a comestibles, artículos del hogar, novedades, juguetes, regalos, artículos de fotografía, y farmacia, efectos de jiras y pasadías, papelería, comidas ligeras, refrescos, cigarrillos, dulces, leche, o hielo, **excluyendo bebidas alcohólicas;** Disponiéndose que dichos establecimientos comerciales ubicados en las gasolineras o establecimientos comerciales que tengan una operación similar a éstas, deberán cumplir con aquellas disposiciones de ley o reglamento aplicables a los mismos.*

*(g) ...*

*(h) ...*

*(i) ...*

*(j) ...*

*(k) ...*

*(l) ...*

*(m) ...*

*(n) ...*

*Cuando un establecimiento comercial realice operaciones cubiertas por las excepciones de esta sección conjuntamente con operaciones sujetas a las disposiciones de las secs. 302, 303 y 304 de este título, podrá realizar solamente las operaciones exentas bajo esta sección de forma continua sin sujeción al horario establecido en las secs. 302, 303 y 304 de este título y tomará todas las precauciones que sean necesarias para impedir el acceso del público consumidor y evitar las operaciones no exentas durante las horas de cierre dispuestas en este capítulo. El Secretario del Trabajo y Recursos Humanos tendrá facultad para vigilar y requerir el cumplimiento de esta disposición y señalará por Reglamento las precauciones que deberán observarse en la situación aquí prevista."* (Énfasis nuestro).

Por su parte, las disposiciones de la Ley de Monopolios de Puerto Rico, *supra*, y del Reglamento sobre Competencia Justa Número VII, *supra*, intentan combatir las prácticas comerciales injustas y monopolísticas. Específicamente, la Ley de Monopolios de Puerto Rico, *supra*, intenta asegurarle al pueblo de Puerto Rico en general, y a los pequeños comerciantes en particular, los beneficios de la libre competencia y evitar las concentraciones de poder económico. *G.G. & Supp. Corp. v. S. & F. Systs., Inc.*, 153 D.P.R. 861 (2001).

Como parte del proceso de querellas administrativas, la Ley de Cierre, en su Artículo 11, 29 L.P.R.A. § 310, dispone en lo pertinente que:

*"... Toda infracción a las disposiciones de este Capítulo constituirá además una práctica o método injusto y desleal de competencia. En estos casos, la Oficina de Asuntos Monopolísticos podrá radicar y tramitar la*

*correspondiente querella ante el Departamento de Asuntos del Consumidor a tenor con lo dispuesto en la sec. 259 del Título 10. El Departamento de Asuntos del Consumidor impondrá a los violadores de la ley multas administrativas que no serán menor de mil (1,000) dólares ni mayores de veinticinco mil (25,000) dólares, las cuales ingresarán al Fondo Especial creado por la sec. 1016 del Título 23, para fortalecer los recursos disponibles de la Oficina de Asuntos Monopolísticos para asegurar el cumplimiento de este Capítulo y para sufragar el costo de programas de entrenamiento y mejoramiento profesional de sus funcionarios. "*

Por otro lado, es norma reiterada que la revisión judicial de las determinaciones finales de las agencias administrativas es una de carácter limitado. La función de los tribunales se limita a determinar si la actuación de la agencia revisada no fue *ultra vires*, arbitraria o caprichosa. Si éstas sobrepasan este escrutinio judicial, deben sostenerse. Nuestra tarea consiste en constatar que las determinaciones de hechos del organismo administrativo se basan en evidencia sustancial contenida en la totalidad del expediente administrativo. Evidencia sustancial es aquella evidencia relevante que una mente razonable puede aceptar como adecuada para sostener una conclusión. Sólo intervenimos con las determinaciones fácticas de un organismo administrativo, cuando concluimos que las mismas no se sostienen en la evidencia que obra en la totalidad del expediente. La parte que impugna las determinaciones de hechos de una agencia administrativa tiene la obligación de identificar la existencia de prueba distinta a la considerada, que reduce o menoscaba el valor probatorio de la prueba tomada en cuenta por el organismo administrativo. Las determinaciones administrativas gozan de una presunción de legalidad y corrección, pues cuentan con la experiencia y los conocimientos altamente especializados necesarios para poner en vigor las leyes de las que son custodios. *Rivera v. A & C Development Corp.*, 144 D.P.R. 450 (1997).

Las conclusiones de derecho, sin embargo, serán revisables por este Tribunal en todos sus aspectos. No obstante, como regla general, le reconocemos gran peso y deferencia a las interpretaciones de un estatuto hechas por la agencia administrativa encargada de su cumplimiento. La interpretación impartida al estatuto por la agencia llamada a aplicarlo no tiene que ser la única. Basta que la interpretación de la agencia sea razonable y consistente con el propósito legislativo que la animó. *Misión Ind. P.R. v. J.P.*, 146 D.P.R. 64, 132 (1998). No obstante, las conclusiones de derecho de la agencia no merecen deferencia si éstas afectan derechos fundamentales, si son irrazonables, o conducen a la comisión de injusticias. *Com. Seg. P.R. v. Antilles Ins. Co.*, 145 D.P.R. 226 (1998). Tampoco ha de prevalecer la interpretación de la agencia, cuando la misma produce resultados inconsistentes o contrarios al propósito del estatuto interpretado y a su política pública. *Calderón v. Adm. Sistemas de Retiro*, 129 D.P.R. 1020 (1992*); De Jesús v. Depto. Servicios Sociales*, 123 D.P.R. 407 (1989).

**IV**

Debemos determinar si erró el DACO al concluir que a la parte recurrente le es aplicable el inciso (f) y no el (b) de las excepciones contempladas en el Artículo 6 de la Ley de Cierre o que, de serle aplicables ambos, sus efectos no son contradictorios. Veamos.

En el caso que nos ocupa, la prueba presentada ante el DACO demostró, y no está en controversia, que la parte recurrente abrió su estación de gasolina al público en general el domingo 22 de enero de 2006, y a las 9:10 de la mañana, en violación a lo dispuesto por el Artículo 6 (f) de la Ley de Cierre y vendió bebidas alcohólicas (una cerveza) al agente David Alnaldy. No obstante, en su primer señalamiento de error, la parte recurrente contiende que por virtud del inciso (b) del Artículo 6 de la Ley de Cierre, está excluida de la aplicación de las prohibiciones de la referida ley. Específicamente, sostiene que al clasificar en el tipo de establecimiento comercial contemplado en el inciso (b) del Artículo 6 antes mencionado, por no tener más de siete (7) empleados en su nómina semanal, no le es aplicable la prohibición de vender bebidas alcohólicas en el horario establecido los domingos por la Ley de Cierre. No tiene razón.

Como vimos en la normativa reseñada, el referido Artículo 6 contempla la posibilidad de que un negocio mantenga actividades comerciales exentas, conjuntamente con actividades no exentas. El Artículo 6, *supra*, dispone, lo siguiente:

*"Cuando un establecimiento comercial realice operaciones cubiertas por las excepciones de esta sección conjuntamente con operaciones sujetas a las disposiciones de las secs. 302, 303 y 304 de este título, podrá realizar solamente las operaciones exentas bajo esta sección de forma continua sin sujeción al horario establecido en las secs. 302, 303 y 304 de este título y tomará todas las precauciones que sean necesarias para impedir el acceso del público consumidor y evitar las operaciones no exentas durante las horas de cierre dispuestas en este capítulo. El Secretario del Trabajo y Recursos Humanos tendrá facultad para vigilar y requerir el cumplimiento de esta disposición y señalará por reglamento las precauciones que deberán observarse en la situación aquí prevista."* (Énfasis nuestro.)

El Informe de la Comisión Especial sobre el Estudio de la Ley de Cierre de la Cámara de Representantes de Puerto Rico, Informe de la Comisión Especial sobre el Estudio de la Ley de Cierre de la Cámara de Representantes de Puerto Rico sobre el P. de la C. 819 de 25 de octubre de 1989, según citado en *ELA v. Lucas Malavé,* Opinión Disidente emitida por el Juez Asociado señor Rivera Pérez, a la cual se unieron los Jueces Asociados señores Hernández Denton y Corrada del Río, 157 DPR 586 (2002), al comentar sobre esta disposición estatutaria, expresó lo siguiente:

*"Por supuesto, si en un establecimiento comercial se realizan otras actividades no exentas, el establecimiento comercial podrá operar sin las restricciones impuestas por la ley sólo en las actividades económicas exentas. Por ejemplo, si existe una combinación de colmado con cafetería o similar podrá abrir la sección de cafetería, pero no la de colmado durante los días y horas que se establece para el cierre."* (Énfasis nuestro.)

El establecimiento comercial de la parte recurrente realizaba actividades exentas junto con actividades comerciales proscritas por la Ley de Cierre. El referido establecimiento, además de caer bajo la excepción establecida en el inciso (b) del Artículo 6, le es de aplicación el inciso (f). Esto es, al no tener más de siete empleados y al ser una estación de gasolina, por disposición expresa de ley, está exenta de las horas de apertura y cierre contempladas en el Artículo 5, de la Ley de Cierre, *supra.* Sin embargo, en el inciso (f) de la aludida ley, aplicable a las estaciones de gasolina, el legislador fue específico y excluyó expresamente la venta de bebidas alcohólicas en estas estaciones fuera del horario de apertura dominical contemplado en el Artículo 5 de la referida ley.

De igual forma, el Artículo 6 de la Ley de Cierre, le impone al dueño del establecimiento comercial, que realiza actividades comerciales mixtas, la obligación de tomar todas las precauciones que sean necesarias para impedir el acceso del público consumidor al área restringida y así evitar que se realicen operaciones no exentas durante las horas de cierre establecidas por ley. Quedó demostrado que la parte recurrente no sólo no tomó ninguna precaución, sino que vendió una cerveza durante las horas de cierre dispuesta por ley. De esta manera violó las disposiciones de la Ley de Cierre, al realizar una actividad comercial no exenta en las horas restringidas.

No podemos avalar la alegación de la parte recurrente de que al tener una nómina de sólo siete empleados, estaba exenta de la Ley de Cierre, por virtud de la excepción contemplada en el inciso (b) del Artículo 6 de la misma y que bajo esta excepción no esta prohibida la venta de bebidas alcohólicas. Esto, independientemente de lo dispuesto en el inciso (f) aplicable a las estaciones de gasolina. En otras palabras, que al ser de aplicación más de una de las excepciones contempladas en la ley, la parte recurrente escoge la excepción que mejor le conviene a sus intereses.

A nuestro juicio, la situación ante nos sólo implica que por tener siete empleados la parte recurrente puede operar los domingos sin restricción en su horario de apertura y cierre bajo el inciso (b). No obstante, también es de aplicación lo dispuesto para las estaciones de gasolina en el inciso (f) del mismo artículo. Siendo el negocio operado por la recurrente una estación de gasolina le es de aplicación la prohibición de vender bebidas alcohólicas contenida en este último inciso. De lo contrario, las disposiciones específicas de la Ley de Cierre, limitando las ventas en las estaciones de gasolina durante el horario dominical, sería letra muerta en los casos como el de epígrafe donde la estación es operada con siete empleados, o menos. En el presente caso, la aplicabilidad del inciso (f) puede coexistir con la del inciso (b) en la media en que el establecimiento comercial de la parte recurrente, por tener siete empleados o menos, puede operar durante el horario en que la ley ordena el cierre, lo que puede hacer además por ser una estación de gasolina, pero con las limitaciones en sus ventas que le impone la ley a éstas.

En fin, no podemos perder de perspectiva que lo anterior constituye la interpretación de la agencia con el *expertise* en el asunto en conflicto. Su interpretación nos parece correcta y razonable y en ausencia de otra prueba que la desvirtúe, merece nuestra mayor deferencia. Por ello entendemos que no se cometió el error señalado.

En su segundo señalamiento de error, la parte recurrente cuestiona la facultad del DACO para imponerle honorarios de abogado por temeridad. Aduce que al tenor de la Ley Núm. 10 de 20 de marzo de 1972, 23 L.P.R. A. sec. 1016, por haber escogido el procedimiento administrativo ante el DACO en lugar de acudir a los tribunales, la Oficina de Asuntos Monopolísticos no tenía derecho a honorarios de abogado.

En cuanto a los honorarios de abogado, la sección 3.21(c) de la L.P.A.U., 3 L.P.R.A. sec. 2170a, faculta a la agencia administrativa en su función cuasi-judicial a imponerlos como sanción, en los siguientes términos:

*"(c) Imponer costas y honorarios de abogados, en los mismos casos que dispone la Regla 44 de Procedimiento Civil, según enmendada, Apéndice III del Título 32.*

*La Regla 44.1(d), a que alude la sección 3.21(c), supra, dispone para la imposición por concepto de honorarios de abogado cuando el tribunal determine que cualquier parte ha procedido con temeridad. Es principio conocido que la determinación de su procedencia y su cuantía es discrecional del tribunal y no se intervendrá con ésta, salvo abuso de discreción. También está firmemente establecido que la imposición de honorarios de abogado no procede contra el E.L.A. y sus instrumentalidades."* Catalytic Ind. Maint. Co. v. F.S. E., 121 D.P.R. 98, (1988).

De igual forma, la Regla 26.3 del Reglamento de Procedimientos Adjudicativos del DACO, Reglamento Núm. 6219 de 17 de octubre de 2000, faculta al funcionario que presida la vista para imponer honorarios de abogado. Establece que esta imposición se regirá por las disposiciones de las Reglas de Procedimiento Civil. La Regla 44.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44.1, es la que regula lo concerniente a la imposición de honorarios de abogado. Dispone, en lo pertinente, lo siguiente:

*"En caso que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta."*

En el caso de autos, el DACO determinó que la parte recurrente actuó con temeridad, toda vez que a su juicio presentó planteamientos frívolos y carentes de mérito con la única intención de dilatar los procedimientos. En su Resolución, el DACO incluso expresó que las alegaciones de la parte recurrente eran un subterfugio para excusar la comisión de un acto ilegal. (Vea pág. 5 de la Resolución del 8 de agosto de 2007 del DACO, apéndice de la parte recurrente, pág. 6). Así, en virtud de su Reglamento 6219, *supra*, impuso

honorarios de abogado a la parte recurrente. Tal acción está además cobijada por la LPAU. Esta ley facultó a las agencias administrativas, como el DACO, a imponer honorarios de abogado en sus funciones cuasi-judiciales, en los mismos casos que dispone la Regla 44 de Procedimiento Civil.

La parte recurrente trae a nuestra atención que el Tribunal Supremo dispuso en *ELA v. Frigorífico,* 155 DPR 27 (2001), que:

*"Finalmente, procedemos a considerar los **honorarios de abogado** impuestos por el DACO a la Corporación bajo la Ley Núm. 10 de 20 de marzo de 1972. La sección 1 de esta legislación decreta: "En todas las acciones que para protección de los consumidores instaren ante nuestros tribunales y los tribunales federales, la Administración de Servicios al Consumidor y la Oficina de Asuntos Monopolísticos del Departamento de Justicia, podrán dichas agencias recuperar costas y honorarios de abogado." 23 L.P.R.A. sec 1016(a). Según surge del texto, esta ley solamente permite **recuperar** costas y honorarios de abogado **en aquellas acciones que hayan sido instadas ante cualquier tribunal de Puerto Rico o federal.** En el caso ante nos, la Oficina de Asuntos Monopolísticos **no** presentó su acción ante un tribunal, sino ante el DACO, **por lo que no procede la concesión de costas ni honorarios de abogado bajo esta medida."* (Énfasis en el original).

En el caso de epígrafe, lo dispuesto en la sec. 1016 del título 23 de L.P.R.A., y *ELA v. Frigorífico, supra,* no limita la facultad otorgada al DACO por la LPAU, recogida en su Reglamento. Por un lado, lo resuelto por el Tribunal Supremo en el citado caso es que no procede la concesión de honorarios y costas bajo la sección 1016. Nada dispuso en cuanto a la concesión de honorarios por el DACO bajo su Reglamento y la LPAU. Es menester destacar además que DACO resolvió que la parte recurrente había infringido el inciso (f) del Artículo 6 de la Ley de Cierre. Nada determinó en cuanto a las imputaciones de violación a la Ley de Monopolios y el Reglamento Sobre Competencia Justa, *supra.*

Por otro lado, somos de opinión de que la sección 1016 citada no proscribe la concesión de honorarios cuando se recurra al procedimiento administrativo. La disposición nada establece en cuanto a ello. Más bien, se limita a permitir la recuperación de costas y honorarios por el DACO o el Departamento de Justicia en las acciones que presenten ante los tribunales para la protección de los consumidores. Ello en forma alguna implica que su recuperación en acciones presentadas en el foro administrativo esté vedada. Si el legislador lo hubiese querido restringir de esa forma, así lo hubiese establecido. Por el contrario, el legislador facultó mediante la LPAU a las agencias administrativas a imponer honorarios de abogado en los casos allí establecidos. Por tanto, no erró el DACO al imponer costas y honorarios de abogado a la parte recurrente.

## V

Por los fundamentos expuestos, se confirma la Resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Lcda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones